**Douglas A. OLSEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 91–1440.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1991.
Decided Dec. 26, 1991.

**238**

R. Donald Hawkinson, Minneapolis, Minn., argued, for appellant.

Paula K. Speck, argued (Shirley D. Peterson, Gary R. Allen, Kenneth L. Greene, Christine A. Grant and Jerome G. Arnold, of counsel, on the brief), Washington, D.C., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STUART *, Senior District Judge.

STUART, Senior District Judge.

Appellant Olsen claims that the Internal Revenue Service (IRS) wrongfully imposed a 100% penalty against him under I.R.C. § 6672 (1988). He seeks a tax refund of $45,615.85. The principal issue in the case is whether Olsen, concededly a "responsible person" under § 6672, *willfully* failed to pay over to the IRS withheld federal employment taxes collected by his corporation, Precision Machine and Design, Inc.

(Precision Machine). Olsen also claims that he is not liable for the corporation's taxes because he relied on IRS assurances that the taxes would be collected from the corporation's assets. The case was presented to Judge Devitt [1] on cross motions for summary judgment. He granted the government's motion and denied Olsen's motion. Olsen appealed. We affirm.

Sections 3102 and 3402 of the Internal Revenue Code require employers to withhold federal social security and income taxes from the wages of their employees. "Once taxes are collected they become a trust fund in the hands of the employer. 26 U.S.C.A. § 7501. The liability for payment of taxes collected arises upon the collection of those taxes and not the date when the statute requires that they be paid over to the government." *Long v. Bacon* 239 F.Supp. 911, 912 (S.D.Iowa, 1965). *See also Mulee v. United States*, 648 F.Supp. 1181, 1185 (N.D.Ill.1986), and citations therein. If an employer withholds the taxes but fails to pay them over to the government, the employee is nevertheless credited with payment. *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Donelan Phelps & Co. v. United States*, 876 F.2d 1373, 1375 (8th Cir.1989); *Elmore v. United States*, 843 F.2d 1128, 1132 (8th Cir.1988). Thus, unless the government has recourse against the person or persons responsible for nonpayment, the taxes will be lost. *Slodov*, 436 U.S. at 243, 98 S.Ct. at 1783; *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976).

To protect against such losses, I.R.C. § 6672 provides that when a person required to collect, account for, and pay over withholding taxes (*i.e.*, a "responsible person") willfully fails to do so, he is liable for a penalty equal to the amount of the unpaid taxes. *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir.1990); *Elmore*, 843 F.2d at 1132; *Bowen v. United States*, 836 F.2d 965, 968 (5th Cir.1988). Although denominated a "penalty," the liability im-

---

\* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

posed by § 6672 is not penal in nature, since it brings to the government only the same amount to which it was entitled by way of the tax. *Hartman,* 538 F.2d at 1340; *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970). Thus, § 6672 "is simply a means of ensuring that the tax is paid...." *Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963). In keeping with this purpose, § 6672 has been broadly and liberally construed "to prevent the unnecessary loss of tax funds by permitting the 'taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing.'" *Newsome,* 431 F.2d at 745 (quoting *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970)).

Section 6672 imposes liability on an individual if two requirements are met: (1) the person must be a "responsible person," and (2) the person must act "willfully" in not paying over the taxes. *Kizzier v. United States,* 598 F.2d 1128, 1132 (8th Cir.1979). The responsible person has the burden to show that he did not willfully fail to pay over the federal employment taxes. *Anderson v. United States,* 561 F.2d 162, 165 (8th Cir.1977).

## FACTS

Appellant purchased the stock of Precision Machine in 1975 and served as president and chief executive officer until operations ceased in June 1985. In 1982, he and an IRS agent discussed federal employment tax liabilities of Precision Machine. In 1984, Precision Machine entered into an agreement with IRS to pay federal employment taxes for the third and fourth quarters of 1982 and the second quarter of 1983 in installments. Payments were made on this agreement throughout the relevant period. However, the agreement provided that it became null and void if the employer failed to keep its withholding obligations current.

In the spring of 1985 Precision Machine experienced extreme financial difficulties. Payments were made to creditors other than IRS for materials and services that were necessary to keep the corporation operating. Employee taxes were withheld but were not paid to IRS. During March, April and May 1985, Olsen negotiated with banks, suppliers and customers but was unable to make arrangements necessary to keep the corporation operational.

In early June, Olsen decided to "wind the corporation down." This decision brought about several meetings with the Carver County State Bank (the bank), a secured creditor, which resulted in the bank taking control of the accounts receivable and requiring its approval of the disbursements. On June 24, 1985 Olsen initiated a meeting with IRS agents Chandler and Drogue. He identified the assets of Precision Machine, including its accounts receivable. The total value exceeded the employee taxes due the federal government. He was assured by them that the IRS was in a superior position to all creditors, including the bank, and that the taxes would be collected from the corporation's assets.

On June 25, 1985 the IRS served notice of levy on the bank and twenty-one of Precision Machine's customers. On July 17, 1985, the bank changed the locks on Precision Machine's doors. The same day IRS served notice of levy on other customers of Precision Machine. The IRS lien on Precision Machine property was inferior to the liens of the bank and the government was unable to collect the employee taxes from Precision Machine's assets.

On February 25, 1986, Olsen, as a responsible person under § 6672, was assessed a penalty of 100% of the unpaid withheld taxes for the fourth quarter of 1982, the second and third quarters of 1983 and the first and second quarters of 1985. On August 7, 1989, Olsen and his wife sold their home and paid IRS the amount allegedly due IRS out of the proceeds. Thereafter this action for refund of the taxes was filed.

## DISCUSSION

Olsen concedes he is a responsible person but argues that he did not willfully fail to pay over the employee taxes because he

made the best efforts to ensure that the taxes would be paid from corporation assets. He argues that:

At all times the corporation had assets sufficient to cover those deficiencies. Mr. Olsen, believing that direct dealings with the IRS would be the most responsible, productive, and effective method of collecting the taxes, approached the IRS and described the assets for the IRS, described their location, and provided the IRS with a method of collecting those assets. The IRS then assured Mr. Olsen that he had taken the correct course of action and told Mr. Olsen that they could and would collect these assets to pay the tax deficiencies. Relying on that information, Mr. Olsen left the IRS with the confidence that the taxes would in fact be collected. More importantly, Mr. Olsen believed that he would not need to undertake any action personally to collect these taxes but that the IRS would because they could do so more effectively and efficiently. All the while, Mr. Olsen could have collected the accounts receivable himself by merely going to each business which owed Precision Machine money and personally picking up the drafts.

Although similar arguments have been considered in some cases in determining whether a person acted willfully as used in § 6672, *see Mangieri v. United States,* 86–2 U.S. Tax Cas. (CCH) ¶ 9824, 657 F.Supp. 726 (D.Md.1986); *Sawyer v. United States,* 86–2 U.S. Tax Cas. (CCH) ¶ 9745, 1986 WL 12874 (N.D.Ind.1986), *rev'd,* 831 F.2d 755 (7th Cir.1987); *Kraus v. United States,* 85–1 U.S. Tax Cas. (CCH) ¶ 9310, 1985 WL 6230 (E.D.N.Y.1985); *Tozier v. United States,* 65–2 U.S. Tax Cas. (CCH) ¶ 9621 (W.D.Wash.1965), the argument more nearly resembles one of estoppel. *See, e.g., Mulee,* 648 F.Supp. at 1186–87. For that reason we will treat separately the questions of willfulness and estoppel.

## (A) Willfulness

A responsible person acts willfully within the meaning of § 6672 whenever he "acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes." *Hartman,* 538 F.2d at 1341. *Accord Bowen,* 836 F.2d at 968; *Kizzier,* 598 F.2d at 1132. A responsible person also acts willfully by proceeding with a " 'reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.' " *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987) (quoting *Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979)); *Mazo v. United States,* 591 F.2d 1151, 1154 (5th Cir.), *cert. denied sub nom. Lattimore v. United States,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

■ Evidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law. *See Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977). *See also Hochstein v. United States,* 900 F.2d 543, 548 (2d Cir.1990); *Howard v. United States,* 711 F.2d 729, 735 (5th Cir. 1983); *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976).

■ A responsible person is also required to use funds acquired after the withholding tax liability arises to satisfy that liability. Thus, "[i]n the case of individuals who are responsible persons both before and after the withholding tax liability accrues * * * there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability * * * constitutes willfulness." *Mazo,* 591 F.2d at 1157. *See also Kizzier,* 598 F.2d at 1134; *Teel,* 529 F.2d at 905.

■ Olsen's conduct and knowledge are not in dispute and clearly satisfy the element of willfulness as defined by the foregoing authorities. In 1982 he knew the obligations of Precision Machine with regard to employee taxes withheld. He admits he was well aware of the consequences to him of the failure to pay over

these taxes. He knew funds received by Precision Machine were being used to pay employees and creditors other than IRS. Olsen's liability under § 6672 was established long before he began cooperating with the IRS to aid it in collecting the taxes from corporate assets. His liability as a responsible person who willfully fails to pay over to the IRS withheld employee's taxes is separate and distinct from the corporation's obligation to pay the taxes. *Bradley v. United States,* 936 F.2d 707, 710 (2d Cir.1991); *Hochstein,* 900 F.2d at 549; *Howard,* 711 F.2d at 736. Under the law set forth above and the undisputed facts in this case, willful failure to pay over the taxes has been established as a matter of law unless a reasonable cause may excuse the failure to pay over the taxes due.

The Fifth Circuit Court of Appeals has recognized conceptually that a reasonable cause may militate against a finding of willfulness. *Howard,* 711 F.2d at 736; *Mazo,* 591 F.2d at 1155; *Newsome,* 431 F.2d at 746. But, "no taxpayer has yet carried that pail up the hill." *Bowen,* 836 F.2d at 968. The courts are split on whether "without reasonable cause" is part of the test of willfulness. Annotation, *Construction, Application, and Effect, With Respect to Withholding, Social Security, and Unemployment Compensation Taxes, of Statutes Imposing Penalties for Tax Evasion or Default,* 22 A.L.R.3d 8, 88–89 (1968 & Supp.1991). This court has held that reasonable cause is no part of the definition of willfulness. *United States v. Strebler,* 313 F.2d 402, 403 n. 2 (8th Cir. 1963). *Accord Harrington v. United States,* 504 F.2d 1306, 1315–16 (1st Cir. 1974); *Monday,* 421 F.2d at 1216.

■ Therefore appellant's argument that he reasonably relied on the IRS to collect the taxes from Precision Machine and refrained from collecting accounts receivable

himself is not relevant to the determination of willfulness. The cases cited by the appellant recognizing reasonable cause are not good authority in this circuit. Willfulness has been established as a matter of law. ·

### (B) Equitable Estoppel

■ "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). It is neither a claim nor a defense but is a means of precluding the assertion of a claim or defense against a party who has detrimentally relied on the conduct of the party asserting the claim or defense. *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C.Cir.1988); *Federal Deposit Ins. Corp. v. Roldan Fonseco,* 795 F.2d 1102, 1108 (1st Cir.1986). In order for Olsen to prevail on estoppel he must prove that the IRS agents in addition to the ordinary elements of estoppel that the agents were guilty of affirmative misconduct. Nothing of that kind has been shown here.

In several other cases federal courts have considered estoppel either specifically or as a test for finding reasonable cause for failure to pay over the taxes [2]. *Bowen,* 836 F.2d at 968; *Howard,* 711 F.2d at 736; *Newsome,* 431 F.2d at 746–47; *Mulee,* 648 F.Supp. at 1186–87; *Sawyer,* 86–2 U.S. Tax Cas. (CCH) ¶ 9745.

■ The facts viewed most favorably to the appellant establish that when Olsen came to the IRS in the middle of June 1985 with the corporation's financial problems, the corporate assets, including accounts receivable, were more than enough to satisfy the tax liability involved here. After he identified the assets, he was told by the IRS agents that the IRS liens were superior to those of the bank and that the

**2.** The United States Supreme Court has never decided whether an estoppel claim could ever succeed against the government, although its opinions have mentioned the possibility that some type of affirmative governmental conduct might give rise to estoppel. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 2469–2471, 110 L.Ed.2d 387 (1990).

But, "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224 (footnote omitted). In this case we need not reach that issue because appellant has failed to establish that he was in any way injured by any government misrepresentations.

government would collect the taxes from the corporation's assets. In fact, the IRS liens were subordinate to the bank liens and the corporation's assets were not available to satisfy the corporation's obligations. Olsen was not given this information until August 27, 1985. He claims that if he had known the IRS was not going to collect the taxes from the corporation, he could have collected the accounts receivable himself and paid the IRS with those proceeds.

Appellant relies principally on *Tozier v. United States*, 65–2 U.S. Tax Cas. (CCH) ¶ 9621 (W.D.Wash.1965). The court there held that "the failure of [the government] to collect any withholding taxes and employees' portions of FICA from [the corporate employer] was due to its own acts and conduct in permitting, causing or suffering assets of said corporation to be dissipated, lost or paid to persons or entities whose claims and charges were inferior and subordinate to [the government's] claims for such taxes." *Id.* at 96,648. The court decided that under the circumstances of that case the responsible persons did not willfully fail to collect or pay over any tax.

Other cases cited by appellant in support of this claim indicate that the government had done or said something that the taxpayer relied on that prevented the use of corporate assets to pay the taxes. In *Mangeri v. United States*, 86–2 U.S. Tax Cas. (CCH) ¶ 9824, 657 F.Supp. 726 (D.Md.1986), the IRS failed to take steps to perfect the responsible person's assignment of the proceeds of a contract with the Army. As a result, the proceeds of the contract went to creditors other than IRS.

In *McCarty v. United States*, 437 F.2d 961, 194 Ct.Cl. 42 (1971), the IRS waived a superior lien by agreeing to a Navy plan which subordinated IRS's claim against the employer to claims of the Navy and Air Force when the tax could have been collected from the corporation had IRS foreclosed its tax lien. This conduct absolved the responsible person from liability under § 6672. In *Anderson v. United States*, 77–2 U.S. Tax Cas. (CCH) ¶ 9701, 1977 WL 1252 (W.D.La.1977), the court held that the responsible person had reasonable cause for failure to pay over the taxes because, after being specifically notified of the bankruptcy proceedings, the IRS failed to file a claim in bankruptcy when there were funds in the bankrupt estate to pay the taxes.

Here there is no evidence that IRS had a superior right to the corporate assets it did not pursue. It acted promptly in giving notice of the liens to the bank. It did nothing which permitted the corporate assets to be dissipated or paid to parties with inferior rights. The agents were mistaken when they told Olsen that the IRS liens were superior, but there is no evidence that the IRS could have done anything to get around the bank's superior lien.

Appellant claims that the detriment he sustained as a result of the misinformation he received and the delay in informing him of the error was that he was deprived of the opportunity to collect the accounts receivable himself and pay the IRS directly. There is no substance to that claim. The accounts receivable were covered by the bank's lien. The bank could have retrieved any payments Olsen made to the government. Such action by Olsen would have exacerbated his problems rather than solving them.

Therefore, even if under some circumstances a claim of estoppel can be urged against the government, appellant in this case has failed to establish that any misrepresentations made by the government on which he relied caused him any detriment. He has not, as a matter of law, proved a claim of estoppel.

### (C) Installment Agreement

■ Appellant also argues that the two quarters ending March 31, 1985 and June 30, 1985 are the only ones at issue here because the 1982 and 1983 quarters were the subjects of an installment agreement. Although payments had been made as required by that agreement, the contract provided that it was null and void if the corporation became delinquent in subsequent quarters. Therefore, the IRS was entitled to recover the balance of the taxes due for

the third and fourth quarters of 1982 and the second quarter of 1983 as well as the delinquent taxes for the two 1985 quarters.

### (D) Corporate Control

██ Appellant also argues that he was not a responsible person after June 21, 1985 and that the case should be remanded to the district court for a determination of the amount of the taxes that were due on wages paid for the period between June 21 and June 30, 1985. In his affidavit Olsen states:

> [that on June 21, 1985] Precision Machine and Design, Inc. agreed to send its customers a letter signed by both your affiant and the bank president stating that any checks issued to Precision Machine and Design, Inc. should be in the name of both Precision Machine and Design, Inc. and Carver County State Bank and the bank would aid Precision Machine and Design, Inc. with the Internal Revenue Service obligation. All proceeds from accounts receivable were to be placed in a special fund in the name of both Precision Machine and Design, Inc. and Carver County State Bank. At that point, all checks issued would be approved by a bank officer prior to disbursement. Payrolls for each week thereafter were sent or called into the bank with the Internal Revenue Service and Minnesota withholding amounts broken out. Your affiant states that at that point he lost control of the corporation.

This agreement never was consummated. In any event, under these facts and circumstances Olsen would continue to be a responsible person liable for the taxes withheld and unpaid for the whole quarter. He continued to have a part in Precision Machine's operation until he was locked out of the corporate building on July 17, 1985. Significant—not exclusive—control is required. *See Kenagy v. United States,* 942 F.2d 459, 464 (8th Cir.1991); *Kizzier,* 598 F.2d at 1132; *Emshwiller,* 565 F.2d at 1045; *Hartman,* 538 F.2d at 1340. *See also Bowen,* 836 F.2d at 968; *Caterino v. United States,* 794 F.2d 1, 5, 84 A.L.R.Fed. 157, 166 (1st Cir.1986), *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518

(1987); *Howard,* 711 F.2d at 733–735; *Mazo,* 591 F.2d at 1155–57.

For the foregoing reasons, we affirm.