Jim KELLER and Ron Keller, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Counterclaim Plaintiff,

v.

Jim KELLER; Ron Keller; Steve Keller; and Franklin Keller, Counterclaim Defendants.

Civ. No. 94–2111.

United States District Court, W.D. Arkansas, Fort Smith Division.

April 5, 1995.

Oscar Stilley, Ft. Smith, AR, for plaintiffs.

Raymond R. Mulera, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The United States assessed a "100% penalty" of $14,270.90 against plaintiffs and counterclaim defendants pursuant to Section 6672 of the IRS Code of 1986, 26 U.S.C. § 6672, for failure to pay employment withholding taxes.

In this action, plaintiffs, Jim Keller and Ron Keller, seek a refund of monies they have paid pursuant to that penalty. Plaintiffs also seek an abatement of the remainder of the assessment.

The defendant United States has filed counterclaims against Jim and Ron Keller for the unpaid balance of the assessments and against counterclaim defendants, Franklin Dale Keller and Steve Keller for the same $14,270.90.

Both plaintiffs Jim and Ron Keller have filed motions for summary judgment on all claims, and the defendant United States of America has filed a motion for summary judgment on all claims concerning Jim and Ron Keller. Upon review of all the materials submitted by the parties, the court will grant defendant's motion for summary judgment, and deny plaintiffs' motion.

## I. Background

This case involves a group of brothers running various fishing lure manufacturing companies. At issue in this case are the withholding tax liabilities of Sports Products, Inc. ("Sports Products"), a fishing lure manufacturer, incorporated by the Keller brothers in August 1988.

Sports Products began its operations by purchasing equipment from Kel–Lure, a fishing lure corporation managed and partially owned by Franklin Keller. Kel–Lure produced lures exclusively for Bass Pro Shops, Inc., a relationship taken over by Sports Product when Kel–Lure ceased operations.

Both Jim and Ron Keller were aware that Kel–Lure, while operated by Franklin Keller, had financial problems. In fact, Ron Keller was unable to cash his last three paychecks from Kel–Lure. Franklin Keller had also helped run a third lure manufacturer called Trend–Tec, which filed for bankruptcy prior to Kel–Lure's incorporation. Ron Keller also worked for Franklin Keller at Trend–Tec.

Jim Keller owned between 17% and 25% of Sports Products' stock. Jim Keller was also president of Sports Products, due to his ability to guarantee loans. He also assisted in setting up the corporate bank accounts, and he reviewed the corporate checkbook for the first months of the corporation's existence.

Ron Keller owned between 17% and 25% of Sports Products' stock. Ron Keller was also secretary of the corporation. Both Jim and Ron Keller had authority to hire and fire employees; to direct payments of bills and accounts; and to sign checks on the corporate account.

Franklin Keller, who Ron and Jim Keller portray as the villain in this case, did not own any stock, and was never a corporate officer,

but he was the office manager. Most importantly for purposes of this case, Franklin Keller was in charge of filling out and taking care of the quarterly employment tax returns. However, he did not have authority to sign checks on the corporate account. Only Jim and Ron Keller had such authority, and eventually, Steve Keller had that authority as well.

In January 1989, Jim Keller became aware that withholding taxes for the fourth quarter of 1988, ending December 31, had not been paid. There is some dispute over whether these taxes were actually paid untimely. Jim Keller told Franklin Keller to pay the taxes, which was done. (This quarter is immediately prior to the quarters in issue and is not itself part of this suit.)

Eventually it was learned that Sports Products failed to pay its withholding taxes for the first three quarters of 1989. Ron and Jim Keller now claim that Franklin Keller embezzled the assets of the corporation and moved to Costa Rica, leaving them "holding the bag" on the withholding taxes he failed to have paid.

The most important aspect of this case on summary judgment is whether plaintiffs Ron and Jim Keller knew that Sports Products owed outstanding withholding taxes for the first three quarters of 1989 and/or recklessly disregarded that fact. Evidence bearing on that issue will be discussed after a discussion of the controlling law.

## II.  26 U.S.C. § 6672

This cases involves a penalty assessed under 26 U.S.C. § 6672, which provides as follows:

> (a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

█  Once the government has proved that a penalty was assessed under this section, which has been done in this case, plaintiffs bear the burdens of production and persuasion as to all issues, including the lack of willfulness. *Honey v. United States,* 963 F.2d 1083, 1087 (8th Cir.1992). Thus, in order to prevail, the plaintiffs must demonstrate that:

> (1) they were not responsible for the payment of employee withholding taxes; and/or
>
> (2) they did not willfully fail to collect, account for, or pay over those taxes to the IRS.

Plaintiffs concede they were "responsible persons" within the meaning of § 6672, but argue that they did not willfully fail to pay over withholding taxes. The principal issue in this case, then, is whether the plaintiffs *willfully* failed to pay to the IRS withholding taxes collected by their corporation.

## III.  Willfulness

### a.  Controlling Law

█  In order to *willfully* fail to pay over withholding taxes within the meaning of § 6672, plaintiffs must have possessed "knowledge of nonpayment or reckless disregard of whether the payments were being made." *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976); *accord Olsen v. U.S.,* 952 F.2d 236, 238 (8th Cir.1991); *Mazo v. United States,* 591 F.2d 1151, 1155 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

█  A person "knows" that withholding taxes are owed if he is actually aware of the fact. A person "recklessly disregards" the existence of a tax liability "if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *Wright v. United States,* 809 F.2d 425, 427 (7th Cir. 1987); *see also Ruth v. U.S.,* 823 F.2d 1091, 1094–95 (7th Cir.1987); *Thomsen v. United States,* 887 F.2d 12, 18 (1st Cir.1989); *United States v. Carrigan,* 31 F.3d 130, 134 (3d Cir.1994).

█  Once knowledge or reckless disregard of nonpayment is shown, plaintiffs were willful participants in that nonpayment if they

knew about payments to other creditors while withholding taxes were owing. *Olsen,* 952 F.2d at 240; *United States v. Pomponio,* 635 F.2d 293, 298 n. 5 (4th Cir.1980). It is uncontested that plaintiffs knew about and allowed other creditors to be preferred while withholding taxes were owing. The only question is whether, at that time, plaintiffs knew that Sports Products owed taxes during the first three quarters of 1989 or recklessly disregarded that fact.

**b. Controlling Facts**

With regard to the quarters at issue, the IRS assessed liability for the first three quarters of 1989, ending March 31, June 30 and September 30. The corporation's employment tax returns for the first, second, and third quarters of 1989 indicate that no deposits were made and show balances due of $7,929.00, $10,151.08, and $3,931.76, respectively.

 It is uncontested that Jim Keller reviewed the quarterly employment tax returns for at least the first and second quarters. (Depo. of Jim Keller at p. 83). The court considers this to be constructive knowledge of the amounts owing during those quarters, and to create reckless disregard of the amounts owing during the third quarter. These facts alone justify granting summary judgment in favor of the government against Jim Keller. However, *at no point did Jim Keller address these critical facts in the papers filed with this court.*

It is also uncontested that Ron Keller signed the quarterly tax returns for all three quarters, although he may have signed them in blank, under penalty of perjury, rather than upon reviewing the completed form. The court considers this to be constructive knowledge of the amounts owing during all three quarters. These facts alone justify granting summary judgment in favor of the government against Ron Keller. However, *at no point did Ron Keller address these critical facts in the papers filed with this court.*

The government argues that reckless disregard of the amounts owing is also shown by numerous other factors, including the fact that Jim Keller knew that Franklin Keller had failed to pay taxes at least once in the past; that Jim and Ron Keller knew that Sports Products was having cash flow problems; that Jim and Ron Keller knew that Franklin Keller was not trustworthy, due to the failure of Kel–Lure. The court has not relied on these facts in reaching its decision.

**IV. Conclusion**

Plaintiffs' claims will be dismissed, and the government's counterclaims will be granted. A conforming order will accompany the court's opinion. The United States shall submit a precedent of judgment in accordance with the briefing schedule contained in the accompanying order.