# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-1823
_____

Douglas W. Hamilton

*Plaintiff - Appellant*

v.

Bangs, McCullen, Butler,
Foye & Simmons, L.L.P.;
and Jeffrey G. Hurd

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: February 14, 2012
Filed: August 6, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Douglas W. Hamilton appeals the district court's[1] order granting summary judgment in favor of appellees and dismissing his claims for legal malpractice and breach of fiduciary duty. We agree with the district court that Hamilton has failed to show that his loss of net worth was proximately caused by the actions of appellees. Accordingly, we affirm.

I.

Hamilton is the president and owner of Barker & Little, Inc. (Barker & Little), a real estate management company with its principal place of business in Rapid City, South Dakota. In 2004, Hamilton and his company were sued in federal district court by an employee, Celisity Klein-Cadotte, who alleged claims of sexual harassment, retaliation, and intentional infliction of emotional distress. Hamilton retained the law firm of Bangs, McCullen, Butler, Foye & Simmons, L.L.P. (Bangs McCullen) to represent him and his company. Bangs McCullen assigned one of its partners, Jeffrey Hurd, to act as lead defense counsel. Bangs McCullen did not disclose to Hamilton that Hurd had relatively little trial experience and virtually none in regard to sexual harassment claims.

Before the case proceeded to trial, Klein-Cadotte declared bankruptcy. At that time, she valued her claim at $35,000. Hurd made no attempt to try to purchase the claim from the bankruptcy trustee. Although Hamilton now contends he would have been willing to settle the case with the trustee for $35,000, Hamilton was otherwise unwilling to mediate or to settle the case.

The Klein-Cadotte case proceeded to trial, and the jury returned a verdict against Barker & Little for $4.1 million. No verdict or judgment was rendered against Hamilton personally. The court reduced the judgment against Barker & Little to

---

[1] The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

approximately $1.7 million. The court then granted Barker & Little's motion for a new trial, finding that one of its rulings on an attorney-client privilege issue unduly prejudiced Barker & Little. Before proceeding to a second trial, Barker & Little and Klein-Cadotte settled Klein-Cadotte's claims.[2]

Hamilton was the personal guarantor on the loans and credit lines provided by lenders to Barker & Little. After the original jury verdict, banks and lenders refused to continue extending credit to Hamilton. As a result, Hamilton's personal empire of real estate holdings crumbled, causing Hamilton to lose dozens of commercial and residential properties, hundreds of mobile homes and land parcels, and his home.

In this action, Hamilton sued Hurd and Bangs McCullen (collectively "appellees") based on their representation in the Klein-Cadotte litigation. Hamilton contends appellees committed a series of negligent errors during their representation, which "ultimately forced the underlying retaliation and sexual harassment case to be tried to verdict, when it instead could, and should, have been settled confidentially or otherwise disposed of well before trial." Hamilton claims the appellees' negligence resulted in a multi-million dollar award against Barker & Little, which in turn caused banks and lenders to refuse to continue lending credit to Hamilton.

Approximately six months after filing an answer to Hamilton's complaint, appellees filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The parties jointly moved to have the court suspend discovery to allow the court to rule on the Rule 12(c) motion. After Hamilton filed a brief in opposition that attached supporting documents, the court granted the motion to stay discovery and gave the parties notice that it would be treating the Rule 12(c) motion as one for summary judgment. See Fed. R. Civ. P. 12(d). The parties submitted

---

[2] Hamilton indicates that the settlement amount was ten times what the claim could have been bought from the Klein-Cadotte bankruptcy trustee. However, neither party includes a record citation to show the settlement amount.

further briefing, and Hamilton's attorney filed an affidavit seeking further discovery under Federal Rule of Civil Procedure 56(f).[3] The court ruled in favor of the appellees and dismissed Hamilton's claims. As part of its rationale, the court found that Hamilton's Rule 56(f) affidavit was insufficient because it failed to include "any statement as to the specific facts which . . . discovery may produce which would be essential to plaintiff's opposition to defendant's motion for summary judgment." Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P., No. 10-5009, 2011 WL 902489, at *7 (D.S.D. Mar. 15, 2011). Hamilton timely appealed.

## II.

Hamilton argues the district court erred in dismissing his legal malpractice and breach of fiduciary duty claims.

"To prevail in his legal malpractice action, [a plaintiff] must . . . prove the four basic elements of negligence: (1) an attorney-client relationship giving rise to a duty; (2) the attorneys, either by an act or a failure to act, violated or breached that duty; (3) the attorneys' breach of duty proximately caused injury to the client; and (4) actual injury, loss, or damage." Yarcheski v. Reiner, 669 N.W.2d 487, 493 (S.D. 2003).[4]

---

[3] Rule 56(f) was the applicable rule at the time Hamilton's counsel filed his affidavit asking for further discovery. "On December 1, 2010, the Federal Rules of Civil Procedure were amended, and it is now Rule 56(d) that allows a court to grant additional time for discovery to the nonmoving party in a motion for summary judgment." Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 792 n.4 (8th Cir. 2012).

[4] "Federal courts sitting in diversity apply the choice-of-law rules of the forum state." Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). "South Dakota has adopted the most significant relationship test as its choice of law rule in tort cases." Penney v. Praxair, Inc., 116 F.3d 330, 333 n.4 (8th Cir. 1997). The district court found, and the parties agree, that the law of South Dakota should apply. We agree that South Dakota has the most significant relationship to the facts of this case

A breach of fiduciary claim shares essentially the same four elements. "[A] plaintiff must prove: (1) that the defendant was acting as a fiduciary of the plaintiff; (2) that he breached a fiduciary duty to the plaintiff; (3) that the plaintiff incurred damages; and (4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." Grand State Prop., Inc. v. Woods, Fuller, Shultz, & Smith, P.C., 556 N.W.2d 84, 88 (S.D. 1996) (citation and line breaks omitted).

The district court granted judgment in favor of appellees on Hamilton's claims for two reasons. First, the district court found that Hamilton failed to produce expert evidence to support his claim that Hurd's conduct violated the standard of care or breached a duty. Second, the court found that Hamilton failed to demonstrate a legal causal connection between appellees' actions and his injuries. In his appeal, Hamilton argues the district court erred by: (1) relying on a lack of expert testimony when appellees had not raised the issue and where notice was not given to the parties; (2) failing to allow Hamilton further discovery under Federal Rule of Civil Procedure 56(f); and (3) finding Hamilton failed to support the proximate causation element for his claims of attorney negligence and breach of fiduciary duty. We focus our attention on Hamilton's latter two arguments because we find them dispositive.

A.

We first address Hamilton's contention that the court erred by not postponing the summary judgment ruling until after further discovery was completed. "We review a district court's denial of a motion filed under Rule 56(f) for abuse of discretion." Marksmeier v. Davie, 622 F.3d 896, 903 (8th Cir. 2010).

"As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" Iverson v. Johnson Gas Appliance Co., 172 F.3d

_____

and thus apply South Dakota substantive law.

524, 530 (8th Cir. 1999) (quoting In re TMJ Litig., 113 F.3d 1484, 1490 (8th Cir. 1997)). "Nonmovants may request a continuance under Rule 56(f) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition. This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)). Yet Rule 56(f) "'is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993) (citation omitted). A Rule 56(f) affidavit must "set forth 'specific facts further discovery might uncover,' or what information further discovery might reveal." Anuforo v. Comm'r of Internal Revenue, 614 F.3d 799, 808 (8th Cir. 2010) (citation omitted).

In the instant case, Hamilton's attorney filed an affidavit lamenting the fact that no depositions had yet taken place and indicating that Hamilton intended to take the depositions of, *inter alia*: Hurd, representatives from various banks and lenders, and the Klein-Cadotte bankruptcy trustee. The affidavit stated that "this additional discovery will further bolster and support plaintiff's claims and raise additional disputed facts that would defeat defendant's motion." However, this affidavit failed to meet Rule 56(f)'s requirement of showing what specific facts or information further discovery might reveal. Because Hamilton failed to show what further facts he might be able to uncover if he was given further opportunity for discovery, the district court did not abuse its discretion in denying his request to postpone ruling on the summary judgment motion. See Anuforo, 614 F.3d at 808 (finding no abuse of discretion where party's affidavit seeking more discovery failed to meet Rule 56(f)'s requirements).

B.

Even if we agreed with Hamilton that his attorney's Rule 56(f) affidavit was adequate, Hamilton would still have to overcome the district court's finding that Hamilton could not establish proximate causation to support his claims. "We review de novo a district court's grant of summary judgment, considering the evidence and all reasonable inferences in the light most favorable to the non-moving party." Anheluk v. Ohlsen, 459 F.3d 874, 877 (8th Cir. 2006).

"[T]o support a recovery in negligence, the defendant's act must have proximately caused the plaintiff's injury." Goff v. Wang, 296 N.W.2d 729, 730 (S.D. 1980). "A proximate or legal cause is a cause that produces a result in a natural and probable sequence and without which the result would not have occurred." Estate of Gaspar v. Vogt, Brown & Merry, 670 N.W.2d 918, 921 (S.D. 2003). Proximate causation "excludes the idea of legal liability based on mere speculative possibilities or circumstances and conditions remotely connected to the events leading up to an injury." Mulder v. Tague, 186 N.W.2d 884, 887 (S.D. 1971). "While legal or proximate cause is generally a jury question, a causal relationship between the alleged [negligence] and injury is not presumed." Burley v. Kytec Innovative Sports Equip., Inc., 737 N.W.2d 397, 409 (S.D. 2007). "To survive a motion for summary judgment, [a plaintiff] 'must present more than unsupported conclusions and speculative statements, which do not raise a genuine issue of fact.'" Id. (citations and internal alterations omitted).

Hamilton's claim that his injuries resulted from the negligence of his counsel requires agreeing to a series of conclusions. First, after the original Klein-Cadotte verdict, Hamilton's company suffered a judgment against it for $4.1 million. As a result of this verdict, Hamilton and his company were the subject of negative news coverage. As a result of this bad publicity, Barker & Little and Hamilton were unable to get credit from banks and lenders. Unable to secure further credit, Barker & Little

defaulted on its loans. Since Hamilton was the personal guarantor of Barker & Little, Hamilton lost his entire net worth of at least $21 million. Hamilton argues that this series of unfortunate events could all have been avoided if Hurd had counseled Hamilton to buy Klein-Cadotte's claim from the bankruptcy trustee or if Hurd had taken a different approach during the course of the trial.[5] If Hurd had bought the claims out of bankruptcy, Hamilton surmises, the case would never have gone to trial, Hamilton's company would have avoided bad press, and financing would have remained in full supply. This best-case scenario presupposes that the bankruptcy trustee would have allowed Hurd to buy the claim and that Hamilton would have been otherwise able to secure financing.

Even if we remanded the case for further discovery and Hamilton was able to present evidence supporting his theory of the case, we agree with the district court that any negligent action by Hurd is too attenuated to be a proximate cause of the loss of Hamilton's net worth. A foreseeable result of Hurd's alleged negligence was that an adverse money judgment would be returned against Hamilton. Yet no judgment was rendered against Hamilton individually during the Klein-Cadotte litigation.[6]

Although the South Dakota Supreme Court has not previously dealt with a tort case with similar facts, we believe the court would decline to find that Hurd's alleged negligence was a proximate cause of Hamilton's harm. See Goff, 296 N.W.2d at 730 (holding to establish proximate causation, "'the defendant's conduct [must have] such an effect in producing the harm as to lead reasonable men to regard it as a cause' of the plaintiff's injury" (quoting Mulder, 186 N.W.2d at 887)). Here, the negative

---

[5] Hurd's alleged negligence at trial included: failing to object to inflammatory statements by Klein-Cadotte's counsel during opening argument; failing to block the reading of a memorandum addressed to Hamilton that was protected by attorney-client privilege; and stipulating to Hamilton's net worth without a limiting instruction.

[6] An adverse judgment was returned against Barker & Little, but Barker & Little is not a party in this action.

publicity received after the verdict was not a natural and probable consequence of any action taken by Hurd at trial. Cf. Wattigny v. Lambert, 408 So.2d 1126, 1139 (La. Ct. App. 1981) (finding attorney who filed judicial pleading containing statements which were clearly defamatory and which were then widely disseminated by newspapers and radio was liable for negligence); Wissore v. Alvey, 562 N.E.2d 978, 984-85 (Ill. Ct. App. 1990) (finding sufficient allegation of attorney malpractice where attorneys' incorrect advice to client resulted in contempt citation against client). Instead, Hamilton received public attention for his *own* actions, actions which he had taken prior to being represented by counsel and which were the basis of the sexual harassment lawsuit. Cf. Weiss v. Van Norman, 562 N.W.2d 113, 117 (S.D. 1997) (finding plaintiff was not liable in breach of contract action as a result of any advice from his attorney; instead, "[t]he obligation was contractual and established long before" plaintiff sought his attorney's advice). Even if we agreed that Hurd's actions in a continual sequence led Hamilton to receive negative publicity, ruling in Hamilton's favor would require us to go even further to find a causal link between the bad press and Hamilton's inability to secure financing. This is not the kind of result that can legally be expected for failing to settle a lawsuit, proceeding to trial, and securing a verdict in a client's favor. We find that Hamilton's loss of net worth is too attenuated from any negligence by appellees.

Any negligence or breach of fiduciary duty by appellees did not proximately cause Hamilton's injuries. The district court correctly granted summary judgment in favor of appellees on this basis. We therefore decline to address Hamilton's additional claim of error based on the district court's dismissal of his claims for lack of expert evidence on the requisite standard of care.

## III.

We affirm.

_____